Charles E. Maxwell, Respondent, *v.* Nathan Hofheimer, Appellant.

*Contents of books beyond the jurisdiction of the court — secondary evidence in regard to the same.*

Where the contents of books do not constitute the subject-matter of an action, and such books are beyond the jurisdiction of the court and there is no process known to the court by which their production can be compelled, a party to the action has the right to give secondary evidence, in regard to their contents, by a person who knew of the correctness of the entries therein and who is able to testify as to the nature of such entries, although such witness could not testify without reference to a duplicate set of books, provided he is able to testify as to such facts after referring to the duplicate books.

Appeal by the defendant, Nathan Hofheimer, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of February, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order made on the 15th of February, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Julius Goldman*, for the appellant.

*John A. Mapes*, for the respondent.

Van Brunt, P. J. :

This action was brought to recover damages for a breach of contract for the sale of whisky. The complaint alleges that on or about the 16th of April, 1890, the defendant contracted and agreed to deliver fifty barrels of rye whisky, which the defendant represented to be of a certain well-known brand, known as the J. G. Mattingly & Sons brand of whiskies of June, 1889 ; the same being dis-

tilled from ninety per cent rye and ten per cent malt, and which fifty barrels were then in the storage warehouse of said Mattingly & Sons at Louisville, Kentucky. The complaint further alleged that on the 24th of June, 1890, the defendant contracted and agreed to sell to the plaintiff 150 barrels of whisky under similar representations as to quality, etc.; and further, that the plaintiff paid for said whisky, having had no opportunity of examining the same or of learning the truth or falsity of such representation. The complaint further alleged that such representations were false and that the plaintiff had been damaged thereby.

Upon the trial of the case it was claimed upon the part of the plaintiff that the barrels of whisky were not branded as called for by the representation; but the court refused to submit any such question to the jury, and only submitted the question as to whether the whisky was of the quality represented, the defendant having conceded that he agreed to sell whisky of the quality alleged.

No exceptions whatever were taken to the charge upon the part of the appellant; and the jury having rendered a verdict in favor of the plaintiff a motion was made for a new trial upon the judge's minutes and denied, and from the judgment and order thereupon entered this appeal is taken.

The only question presented upon this record is as to whether there was any evidence to go to the jury upon the falsity of the representations as to the quality of this whisky. At the conclusion of the evidence it seems to have been conceded by both parties that it was proper to submit such question to the jury, as no motion was made either to dismiss the complaint or for the direction of a verdict.

It is urged upon the part of the appellant that the evidence established that the whisky was of the quality which the defendant agreed to deliver, and he apparently bases this assertion upon the testimony of Mr. Preston D. Mattingly, the distiller of the company, who testified that from actual knowledge there was rye whisky made at said distillery in said months of May and June, 1889, containing ninety per cent of rye and ten per cent malt, and that that was about the usual way in which rye whisky was made at that distillery. But there is not a particle of evidence upon the part of Mattingly that the whisky in question was so manufactured. All that he testified

to is that there was rye whisky containing the ingredients called for by the representation made at the distillery in the months of May, and June, 1889. But he is entirely silent as to how much other rye whisky had been distilled in those months which did not come up to, this standard. There was other evidence (some of which was slight; it is true) which tended to contradict Mr. Mattingly very conclusively, and to show that the whisky contained in the barrels delivered to the plaintiff was not of the quality called for by his contract.

It is urged that it was error to admit the testimony of the internal revenue storekeeper upon the ground that the original books were the best evidence and he should not have been allowed to testify orally. The witness testified that his residence and occupation during the months of May and June, 1889, was that of internal revenue storekeeper in charge at Mattingly & Sons, distillers, Louisville, Kentucky; that he had charge of and saw to the making of the entries on the government book at the Mattingly distillery; that he kept the government book connected with said distillery, and made the entries therein as provided by the laws of the United States during the months above mentioned; that he entered in said book the percentages of corn, rye and malt used in the manufacture of whisky at that distillery, and also the serial numbers of the barrels placed in the warehouse filled with the whisky; that he made entries of the time the material went into the mash and the time it was drawn off into the receiving system and barreled, which was the sixth day from the day it was mashed, including the day it went into the mash. He further testified that he superintended the making of the entries in said book and saw that the whisky was entered into the barrels of the mash referred to, and knew the entries made in the books to be correct; that the collector of internal revenue of the district now has charge of the books so kept by him in which such matters were entered, and that he had positively refused to allow him to inspect such books. He further testified that, by reference to the books of the distillery, which were duplicates of the government book made on government forms and inspected and checked by government officers, he was able to state the date of manufacture of whisky contained in barrels bearing such serial numbers, and also

from what material the said whisky was manufactured. The evidence in this respect was objected to upon the ground that the books were the best evidence, which objection was overruled and an exception taken. The witness then stated, by reference to the books mentioned, checked duplicates of the books kept by him, he found that the whisky contained in the barrels in question entered into the mash on the 24th and 25th of May, 1889. On the 24th of May, 1889, the proportion of grains was thirty per cent corn, sixty per cent rye and ten per cent malt; and, on the following day, the twenty-fifth of May, the proportion was, corn forty-five per cent, rye forty-five per cent and malt ten per cent. This evidence was objected to on the ground that it did not show that he compared any of the entries in the book and that the books were the best evidence, and, furthermore, that the witness had testified that he had been refused access to the books of the collector. This objection was overruled and an exception taken. The question presented is whether, under the circumstances disclosed by the evidence of the witness, it was competent for him to give the evidence which he did. It is urged that the plaintiff was bound to produce the best evidence, namely, the books in question. But, as the books were not the subject-matter of the action, the rule which is invoked does not apply. And as such books are beyond the jurisdistion of this court, and there is no process known to the court which could compel their production, the plaintiff clearly had the right to give secondary evidence in regard to their contents by a person who knew of the correctness of the entries therein and who was able to testify as to the nature of those entries. It is true that the witness stated that he could not testify without reference to the duplicate set of books, but upon a reference to the duplicate books he did testify as to the facts. Under such circumstances there was no valid objection to such testimony because of the non-production of books which were beyond the jurisdiction of the court. If any other rule were to prevail it would be impossible to conduct litigation and to produce evidence contained in collateral papers which are not directly involved in the subject-matter of the action. In respect to such collateral papers, the rule has never been as stringent as it is in regard to written instruments which form the basis of an action or defense as the case may be.

We think, therefore, that no error was committed in allowing the witness to testify after having refreshed his recollection by the distiller's own books.

The judgment and order appealed from should be affirmed, with costs.

FOLLETT, J., concurred.

PARKER, J. :

I concur, but it seems to me that the strongest point is that the books from which A. R. Morris testified were those kept in the distillery in which defendant had a controlling interest as he testifies at folio 166.

Judgment and order affirmed, with costs.